Michael ROFRANO, Plaintiff-Appellee,

v.

Edward DUFFY, Defendant-Appellant.

No. 365, Docket 26832.

United States Court of Appeals
Second Circuit.

Argued May 24, 1961.

Decided June 19, 1961.

William B. Mahoney, Buffalo, N. Y. (Prime Bros. & Duffy, Yonkers, N. Y., Hyman A. Hochman, New York City, and Leo M. Anderson, Jr., Yonkers, N. Y., on the brief), for defendant-appellant.

Myron J. Shon, Yonkers, N. Y. (Abraham E. Wiener, Yonkers, N. Y., on the brief), for plaintiff-appellee.

Before CLARK and WATERMAN, Circuit Judges, and ANDERSON, District Judge.

CLARK, Circuit Judge.

This is a fraud action to recover $10,-500 which the plaintiff found in his basement and turned over to his landlord, the defendant, on the latter's representation that he was the owner. Plaintiff and defendant had adjoining duplex apartments in a two-family house owned by the defendant, and each duplex had two floors and a basement. Plaintiff rented his apartment from the defendant starting in January 1952, and, with defendant's permission, immediately took exclusive possession of the basement belonging to that apartment. Plaintiff testified that in January or February 1953, he determined to paint his living room fireplace, which had been soiled by Christ-

mas decorations; and he went down to the basement, where he recalled seeing some old paint cans. On a shelf about six feet high and two and one-half or three feet wide, plaintiff found a dusty green lunch box hidden behind the paint cans on the extreme rear of the shelf. The box contained $10,500 in American currency. He and his wife then went next door and obtained from defendant's wife the telephone number of the place in Florida where defendant was temporarily staying. They called defendant there, and he represented that the money was his and that plaintiff should give the money to his wife—which was done. Five years later, in 1958, plaintiff had a conversation with a neighbor, and as a result was induced to believe that defendant had defrauded him. Therefore he instituted the present action.

At trial, defendant admitted that he was not the owner of the money, but claimed that it belonged to his deceased brother-in-law, McDonagh. Defendant testified that he met McDonagh at the latter's home the evening before defendant left for Florida in 1952, and that McDonagh gave him the lunch box containing $10,500 for defendant to invest in some Florida real estate they had seen the previous year. Defendant claims that he then put the money behind some paint cans in his own basement, rather than in plaintiff's, and forgot about it until he was already on his trip. According to defendant, the money was found by plaintiff's son while he was trespassing in defendant's basement. The jury believed plaintiff's version of the event, rather than defendant's, and in a special verdict found that the money belonged to neither defendant nor his brother-in-law. Judgment was given for the plaintiff, with interest, on the theory that he was entitled to the money as finder, and that he had been defrauded of it by the defendant's false representation of ownership.

■■ Since the evidence was clearly sufficient to support the verdict, the appeal turns upon alleged errors of law.

Defendant claims prejudice in counsel's opening remarks for plaintiff that a neighbor told the latter in 1958 that a deceased bookie owned the money and that he brought suit for this reason. The court sustained an objection to plaintiff's testimony as to this conversation. Plaintiff's counsel emphasized the conversation in his summation, without referring to its content; and defendant made no objection to either the opening or concluding remarks. The jury subsequently asked the court whether the neighbor could be sued for libel if the previous tenant had not been convicted for bookmaking—a question indicating that the jury was considering the truth of the neighbor's hearsay statement. The judge then instructed the jury that the conversation had been objected to and was "therefore not before you and you must not speculate as to what the conversation may have been."

The only reference to the content of the neighbor's statement was in the opening, when counsel may have had reason to believe that the statement would be admissible as bearing on plaintiff's state of mind, i. e., as showing his innocence and his reliance upon the misrepresentation until 1958. In his closing statement, plaintiff's counsel referred to the conversation (but not to its content) as the answer to his own rhetorical question, "What suddenly came over Mr. Rofrano that from honesty he suddenly became dishonest, he became a liar and a perjurer for that $10,500 when he could have easily kept it and said nothing and there would have been no case?" Since plaintiff's and defendant's versions of the finding directly conflicted, the question of veracity was an important one in the case; and plaintiff's line of argument on summation was a permissible one, and one which could properly make use of the fact of the conversation. Furthermore, the court instructed the jury to disregard the neighbor's statement. Defendant's story of receiving $10,500 cash from his brother-in-law and then forgetting about it the next day is suffi-

ciently fantastic to explain the jury's verdict. We conclude that counsel's remarks did not constitute reversible error.

■■ Defendant contends that he is entitled to the money as a matter of law, because (1) the money was "mislaid" rather than "lost," and (2) "mislaid" property belongs to the owner of the premises rather than to the finder. The first premise is correct. Mislaid property is intentionally put down by the owner and then forgotten, while lost property is property which the owner has parted with casually and involuntarily. See Foulke v. New York Consol. R. Co., 228 N.Y. 269, 127 N.E. 237, 9 A. L.R. 1384; 1958 Leg.Doc. No. 65(A), McKinney's 1958 Sess.Laws of N.Y., p. 1699. A lunch box containing $10,500 is "mislaid" rather than "lost" within the above definitions if found behind paint cans on a shelf six feet above the ground.

■ We find no basis, however, for the assertion that mislaid property goes to the owner of the premises, rather than to his tenant. The New York Law Revision Commission had described the applicable rule as awarding mislaid property to "the person in possession of the premises where it was mislaid." 1958 Leg. Doc. No. 65(A), supra. Here that person is the plaintiff. So the annotator in 170 A.L.R. 706, 707, awards mislaid property to the "owner or occupier" of the premises. Furthermore, after the events which gave rise to the present litigation, New York abolished the distinction between mislaid and lost property, and awarded both to the finder, with exceptions not relevant here. See N.Y.Pers. Prop.Law, § 251 et seq., eff. Sept. 1, 1958. In these circumstances we do not believe that New York courts will cut back the rights of the "finder" in areas where it as yet has no established rule. Accordingly, we hold that the plaintiff is entitled to the money in question, whether as finder or as occupant of the premises.

Defendant's remaining points do not merit extended discussion. The jury accepted plaintiff's testimony that he found the money in 1953, rather than 1952, so that the statute of limitations would be no defense even if it ran from the time of finding. The "newly discovered" evidence, so called, set forth in defendant's sixth point, could have been discovered earlier through the use of due diligence. Since plaintiff was not a trespasser, the denial of the requested charge, as asserted in defendant's seventh point, was at most harmless error.

■ Interest was properly given to the plaintiff as a matter of right. Flamm v. Noble, 296 N.Y. 262, 72 N.E.2d 886, 171 A.L.R. 812; Reno v. Bull, 226 N.Y. 546, 124 N.E. 144; and see Purcell v. Long Island Daily Press Pub. Co., 9 N.Y. 2d 255, 213 N.Y.S.2d 425, 173 N.E.2d 865.

Judgment affirmed.